UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLEEN HURLIE-DUNN,<br><br>    Plaintiff<br><br>V.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY, MATRIX ABSENCE MANAGEMENT, and REID AND RIEGE, P.C. GROUP LONG TERM DISABILITY PLAN,<br><br>    Defendants | CIVIL ACTION NO. |

**COMPLAINT**

INTRODUCTION

1. Plaintiff, Coleen Hurlie-Dunn ("Ms. Hurlie-Dunn") brings this action against the Defendants, Reliance Standard Life Insurance Company ("Reliance Standard"), Matrix Absence Management ("Matrix") (collectively referred to as "Reliance Standard"), and the Reid and Riege, P.C. Group Long Term Disability Plan ("Plan") (collectively referred to as "Defendants"), for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq*. ("ERISA"). Ms. Hurlie-Dunn is a participant in an ERISA welfare benefit plan insured by Reliance Standard and administered by Reliance Standard.

2. Ms. Hurlie-Dunn is filing this action to recover long-term disability ("LTD") benefits due to her under the Plan, to enforce the present rights existing under the Plan, and to clarify

her rights under the terms of the Plan. Ms. Hurlie-Dunn also seeks to recover attorney's fees and costs pursuant to 29 U.S.C. § 1132(g) and prejudgment interest.

3. Ms. Hurlie-Dunn challenges the Defendants': 1) unreasonable and unlawful termination of Ms. Hurlie-Dunn's LTD benefits despite the substantial medical and vocational evidence demonstrating Ms. Hurlie-Dunn's qualification for said benefits; 2) repeated pattern of rejecting and failing to engage with the substantial evidence supporting Ms. Hurlie-Dunn's disability in an effort to limit Defendants' financial exposure for Ms. Hurlie-Dunn's claim; 3) failure to provide Ms. Hurlie-Dunn with a full and fair review of claim for LTD benefits; 4) failure to provide a reasonable claims procedure that would yield an impartial decision on the merits of Ms. Hurlie-Dunn's LTD claim; and 5) breach of their fiduciary duty to act in Ms. Hurlie-Dunn's best interests.

## JURISDICATION AND VENUE

4. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"), in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case, consists of a group long-term disability insurance plan underwritten by Reliance Standard for the benefit of employees of Reid and Riege, PC, which included Ms. Hurlie-Dunn.

5. Additionally, this action may be brought before this court pursuant to 28 U.S.C. 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

6. ERISA provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials. Those avenues of appeal have been exhausted.

7. Venue is proper in this district as many of the events and occurrences relevant to this matter occurred within this district, and the Defendants conduct business in this district. 29 U.S.C. § 1132(e)(2); 28 U.S.C. § 1391.

## PARTIES

8. Ms. Hurlie-Dunn was a resident of Connecticut when she became disabled and began receiving benefits from Defendants under the Plan. Ms. Hurlie-Dunn is a vested participant in her employer's disability benefit plan, within the meaning of 29 U.S.C. § 1002(2)(7). Ms. Hurlie-Dunn has standing to bring this action under 29 U.S.C. § 1132(a).

9. The defendant, Reliance Standard, is a for-profit insurance company, with its principal place of business in Philadelphia, Pennsylvania. Reliance Standard transacts business in Massachusetts and insures and administers the Plan under which Ms. Hurlie-Dunn is suing.

10. The defendant, Matrix, is a for-profit absence management company providing third-party administrator services, with its principal place of business in Philadelphia, Pennsylvania. Matrix transacts business in Massachusetts. Matrix made the claim decisions involved in this matter. Matrix is not referenced in the Trust or the Plan documents.

11. At all times relevant to the claims asserted in this Complaint, Reliance Standard purported to act as an ERISA claims fiduciary with respect to participants of the Plan generally, and more specifically with respect to Ms. Hurlie-Dunn, within the meaning of ERISA.

12. The Plan under which Ms. Hurlie-Dunn is suing is an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. §1002(1).

## STATEMENT OF FACTS

**<u>Relevant Plan Terms.</u>**

13. As an attorney at Reid and Riege, P.C., Ms. Hurlie-Dunn was eligible for LTD coverage under contract of insurance with Reliance Standard.

14. The Plan is administered by Reliance Standard.

15. Reliance Standard is responsible for determining Plan participants' eligibility for benefits under the Plan.

16. Reliance Standard is also responsible for paying benefits to Plan participants it deems are eligible for such benefits.

17. Reliance Standard is a Plan fiduciary.

18. Matrix is a Plan fiduciary.

19. Reliance Standard's decision to terminate Ms. Hurlie-Dunn's benefits was influenced by its financial conflict of interest as both the party determining eligibility for benefits and the party responsible for paying benefits.

20. The Plan contains a narrow definition of disability Ms. Hurlie-Dunn must meet to prove her eligibility for benefits, which is linked to her occupation and earnings. Ms. Hurlie-Dunn is not required to prove that she cannot perform the duties of any occupation, regardless of amount earned or whether she is qualified for such an occupation.

21. As a result of the functional limitations imposed by her illness, Ms. Hurlie-Dunn has met her burden of proving she cannot perform the material duties of her regular occupation on a full-time basis, with or without accommodations.

22. Ms. Hurlie-Dunn has met her burden of proving that she meets the Plan definition of disability and is therefore eligible for LTD benefits under the terms of the Plan.

23. Neither the Plan nor Reliance Standard has any administrative processes and safeguards (as those terms are used in 29 C.F.R. §2560.503-1) in place to ensure and to verify appropriately consistent decision making.

24. Reliance Standard refused to disclose any such guidelines as required by ERISA in response to Ms. Hurlie-Dunn's request.

25. The Plan does not confer discretion on Reliance Standard or Matrix to determine eligibility for benefits or to interpret the terms of the Plan.

26. The judicial standard of review of this matter is de novo.

**Defendants' Conflict of Interest and its Review of Ms. Hurlie-Dunn's Claim**

27. Reliance Standard's financial conflict of interest as the payor of Ms. Hurlie-Dunn's benefits prejudiced its handling of Ms. Hurlie-Dunn's claim, the steps it took to investigate Ms. Hurlie-Dunn's claim, and was responsible for its decision to terminate Ms. Hurlie-Dunn's LTD benefits.

28. Reliance Standard's conflict of interest is exemplified, in part, by the following:

    1) its reliance on biased paper reviewers to justify its termination of Ms. Hurlie-Dunn's benefits;

    2) its reliance on biased paper reviewers to uphold its termination of Ms. Hurlie-Dunn's claim;

    3) its termination of Ms. Hurlie-Dunn's benefits despite the lack of improvement in her condition;

    4) its deference to its own record reviewing physicians to uphold the termination of Ms. Hurlie-Dunn's benefits, while unreasonably dismissing the opinions of Ms. Hurlie-Dunn's treating physicians whose clinical findings were supported by an

independent medical evaluation;

5) its dismissal of the evidence submitted by Ms. Hurlie-Dunn in support of her claim, including Ms. Hurlie-Dunn's sworn testimony and that of her spouse, all of which revealed the errors in Reliance Standard's reviews and supported Ms. Hurlie-Dunn's statements regarding her symptoms and limitations;

6) its failure to address the independent vocational evaluation of Ms. Hurlie-Dunn's claim even though the standard of disability is based on her inability to perform the material duties of her regular occupation;

7) its failure to conduct the requisite vocational evaluation required by Ms. Hurlie-Dunn's Plan;

8) its dismissal of the Social Security Administration's ("SSA") determination that Ms. Hurlie-Dunn was unable to perform the duties of any occupation and its termination of her benefits shortly after she was approved for Social Security Disability ("SSDI") benefits;

9) its failure to conduct an independent review of all the evidence in the record, but rather to defer, entirely, upon the decisions of its reviewing physicians.

29. Defendants failed to "conduct[] [themselves] as a true fiduciary attempting to fairly decide a claim, letting the chips fall as they may[]" in their review of Ms. Hurlie-Dunn's claim. *Lavery v. Restoration Hardware Long Term Disability Benefits Plan*, 937 F.3d 71, 79 (1st Cir. 2019).

**Ms. Hurlie-Dunn's illness and application for long-term disability benefits.**

30. Ms. Hurlie-Dunn ceased working on May 1, 2021, because of debilitating symptoms caused by her combined illnesses.

31. Defendants approved Ms. Hurlie-Dunn's claim for LTD benefits on August 16, 2022.

32. Defendants required Ms. Hurlie-Dunn to apply for SSDI benefits as a part of her LTD claim.

33. Defendants required Ms. Hurlie-Dunn to apply for SSDI benefits even though the Plan definition of disability is less onerous than the SSDI standard of disability, which requires Ms. Hurlie-Dunn to demonstrate an inability to perform the duties of any occupation.

34. SSDI benefits are an offset to Reliance Standard's financial responsibility for Ms. Hurlie-Dunn's LTD benefits under the terms of the Plan.

35. The Social Security Administration approved Ms. Hurlie-Dunn's claim for LTD benefits on May 30, 2023, retroactive to December 28, 2021.

36. The Social Security Administration approved Ms. Hurlie-Dunn's claim on initial application. In 2022, approximately 20% of all SSDI claims were approved on initial application.

37. The Social Security Administration required Ms. Hurlie-Dunn meet the following standard to be approved for benefits:

    An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

42 U.S.C. § 423(d)(2)(A).

38. Ms. Hurlie-Dunn was in the process of repaying Reliance Standard the overpayment due to her retroactive receipt of SSDI benefits in May 2023, Reliance Standard began an investigation of Ms. Hurlie-Dunn's ongoing entitlement to benefits.

39. Reliance Standard's investigation was conducted through August 2023 and included a paper review of incomplete medical records conducted by a Reliance Standard nurse, Mary Jane Gray, RN.

40. On August 21, 2023, Reliance Standard terminated Ms. Hurlie-Dunn's benefits, falsely concluding she was able to perform the material duties of her regular occupation based on the clinical assessment of Nurse Gray.

41. Ignored by Reliance Standard were the opinions of Ms. Hurlie-Dunn's long-term treatment providers as well as her clinically-verified symptoms and limitations.

42. Following receipt of Defendants' August 21, 2023 termination letter, counsel for Ms. Hurlie-Dunn requested a copy of Ms. Hurlie-Dunn's complete claim file from the Defendants, including all internal guidelines relating to the administration of Ms. Hurlie-Dunn's claim.

43. Defendants failed to disclose several pieces of information required to be disclosed under ERISA, including their internal guidelines.

44. On February 25, 2024, April 1 and 11, 2024, Ms. Hurlie-Dunn, through counsel, appealed Defendants' decision to terminate her benefits.

45. Ms. Hurlie-Dunn included with her appeal, medical records, diagnostic test results, a sworn affidavit regarding her activities, a sworn affidavit from her husband, a sworn affidavit from Ms. Hurlie-Dunn's sister, and Ms. Hurlie-Dunn's medical records.

46. Defendants asked Sherry Ann Withiam-Leitch, MD, a physician in North Tonawanda, New York, to review Ms. Hurlie-Dunn's appeal.

47. On June 13 and 14, 2024, Ms. Hurlie-Dunn provided Reliance Standard with the results of an independent vocational evaluation as well as medical records and information on one of

Ms. Hurlie-Dunn's medical conditions, in response to Dr. Withiam-Leitch's review.

48. In response, Reliance Standard requested information regarding another one of Ms. Hurlie-Dunn's conditions, implying that it was unaware of this condition during the course of her claim.

49. In fact, Reliance Standard had been made aware of Ms. Hurlie-Dunn's condition since the onset of her claim, in her claim forms, ongoing medical records, and medical records submitted with her appeal.

50. Reliance Standard's lack of attention to Ms. Hurlie-Dunn's claim is evident in its failure to recognize one of her primary disabling conditions until over four months into the appeals process.

51. Reliance Standard's unreasonable review further delayed its review of Ms. Hurlie-Dunn's appeal, extending beyond the timeframes allowed by ERISA.

52. On June 21, 2024, Dr. Withiam-Leitch drafted an addendum review of Ms. Hurlie-Dunn's medical records.

53. On July 9, 2024, Ms. Hurlie-Dunn provided a letter from her treatment provider responding to Dr. Withiam-Leitch's addendum review, disputing her conclusions. Ms. Hurlie-Dunn also provided the results of an independent medical evaluation, diagnostic test results, updated medical records, and further information on Ms. Hurlie-Dunn's medical conditions.

54. On August 12, 2024, Reliance Standard provided Ms. Hurlie-Dunn with a second record review conducted by Matthew Keller, MD.

55. Dr. Keller's report was focused on Ms. Hurlie-Dunn's second medical condition, which Reliance Standard had ignored throughout its review of her claim and appeal.

56. On August 13, 2024, counsel for Ms. Hurlie-Dunn sent a letter to Reliance Standard requesting clarification as to why Dr. Keller failed to contact Ms. Hurlie-Dunn's treating providers as instructed by Reliance Standard.

57. On August 27, 2024, Dr. Keller conducted an addendum review of Ms. Hurlie-Dunn's medical records indicating that his opinion remained unchanged after treating provider contact.

58. On September 9, 2024, Ms. Hurlie-Dunn provided an assessment form from her treating provider along with another sworn affidavit clarifying the details of a conversation between her provider and Dr. Keller.

59. On September 10, 2024, Ms. Hurlie-Dunn sent a supplemental response to Reliance Standard noting several discrepancies between Ms. Hurlie-Dunn's medical records and Dr. Keller's initial review.

60. In her September 10, 2024 submission, Ms. Hurlie-Dunn also requested to undergo testing or an evaluation as allowed under the Plan to help clarify for Reliance Standard the extent of her restrictions and limitations.

61. On September 28, 2024, Defendants upheld their termination of Ms. Hurlie-Dunn's claim based on the reports of paper reviewers who neither examined nor spoke to Ms. Hurlie-Dunn.

62. Reliance Standard included with its termination letter, a final addendum to Dr. Keller's review, but did not permit Ms. Hurlie-Dunn the chance to review and respond to this review as required by ERISA. Dr. Keller's review relied on Dr. Witham-Leitch's review to support his decision that Ms. Hurlie-Dunn was not disabled.

63. Reliance Standard also dismissed the Social Security Administration's finding that Ms.

Hurlie-Dunn was disabled, stating in its August 21, 2023 initial termination letter:

Sometime ago during the course of her claim, RSL advised her of the benefits of applying for SSDI and had suggested that it may be in her best interest to apply. This suggestion was made after a review of your file by a Social Security Analyst in our office who felt that information in her claim file at that time suggested that her condition might qualify you to receive SSDI benefits. However, new information has been obtained by RSL that has led us to conclude she is no longer eligible to receive LTD benefits under our Policy. This additional information has been described above. While we consider Social Security and other insurers' determinations, they are not binding on RSL's decision as to whether or not she meets the definition of "Total Disability", as set forth in her Policy. A person's entitlement to each of these benefits may be based upon a different set of guidelines, which may sometimes lead to differing conclusions. In addition, each benefit provider may also be considering different medical evidence in the evaluation of a claim. In any event, the receipt of SSDI benefits does not guarantee the receipt of LTD benefits or vice versa.

64. Reliance Standard's justifications for rejecting the Social Security Administration's finding of disability are nothing more than generalizations as to the difference between the Social Security Administration and Reliance Standard's evaluative processes. Such generalizations cannot eclipse the reality that the Social Security Administration's standard of disability is more onerous than Reliance Standard's, making the Social Security Administration's finding worthy of consideration by Reliance Standard in its review.

65. In *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), the Supreme Court found that an insurer's disregard of a SSA award may constitute "procedural unreasonableness." 554 U.S. at 118. Specifically, the Supreme Court found compelling that the insurer encouraged the claimant

to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so (the remainder going to the lawyers it recommended), and then ignored the agency's finding in concluding that [the claimant] could in fact do sedentary work. . . . This course of events was not only an important factor in its own right (because it suggested procedural unreasonableness), but also would have justified the court in giving more weight to the conflict because [the insurer's] seemingly inconsistent positions were both financially advantageous.

11

66. Reliance Standard's disregard of Ms. Hurlie-Dunn's award of SSDI benefits reflects the same procedural unreasonableness the Supreme Court criticized in *Glenn*.

67. As Judge Richard Stearns of the United States District Court for the District of Massachusetts, noted in *Martin v. Polaroid Corporation Long Term Disability Plan,*

> While it is true ... that a claimant bears the burden of proving disability, ... the claims process is not an adversarial one, but a collaborative effort on the part of the claimant and the plan administrator, the ultimate goal of which is not to trick a claimant out of benefits that she deserves because of a failure on her part to square every corner, but to achieve a result that is fair to both the claimant and the Plan.

*Martin v. Polaroid Corporation Long Term Disability Plan*, 2004 WL 1305661 At * (May 27, 2004).

68. Defendants' review of Ms. Hurlie-Dunn's claim was adversarial in nature.

69. Defendants could have requested Ms. Hurlie-Dunn undergo an independent medical examination with their requested medical reviewer but did not do so.

70. Defendants' final determination letter relied exclusively on their paper reviews to uphold the termination of Ms. Hurlie-Dunn's claim, ignoring the evidence submitted by Ms. Hurlie-Dunn's treating physicians, the independent medical examination, the independent vocational evaluation, the sworn statements supporting Ms. Hurlie-Dunn's symptoms and limitations, and Ms. Hurlie-Dunn's clinical evaluations.

71. The Social Security Administration continues to certify Ms. Hurlie-Dunn's disability, paying her benefits to this day.

**Summary of Defendants' Review of Ms. Hurlie-Dunn's Claim.**

72. Ms. Hurlie-Dunn has exhausted her administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

73. Ms. Hurlie-Dunn's disability and eligibility for LTD benefits is based on the substantial evidence in Defendants' possession.

74. Ms. Hurlie-Dunn's condition had not changed, nor had it improved, at the time Defendants terminated her claim for benefits.

75. Since the date of onset of her disability, Ms. Hurlie-Dunn has been and remains unable to perform the material duties of her regular occupation due to her impairments. Since her impairments are chronic and have not improved in any material respect despite extensive treatment, there does not appear to be any reasonable likelihood of medical improvement at any time prior to the expiration date of the scheduled benefit payments. As a result, Ms. Hurlie-Dunn is entitled to the reinstatement of her benefits with payment of all benefits in arrears with 12% interest, along with continuation of payments so long as she meets the Policy's definition of "disabled."

76. Defendants and their medical reviewers arbitrarily dismissed Ms. Hurlie-Dunn's symptoms and functional limitations when they determined that Ms. Hurlie-Dunn was not disabled.

77. Defendants failed to have Ms. Hurlie-Dunn's claim assessed by a medical provider with the appropriate credentials to evaluate her eligibility for benefits as required by ERISA's implementing regulations.

78. Defendants failed to address or evaluate the clinical findings of Ms. Hurlie-Dunn's treating and evaluating physicians regarding Ms. Hurlie-Dunn's symptoms, restrictions, functional limitations, and disability.

79. Defendants repeatedly and unreasonably dismissed Ms. Hurlie-Dunn's symptoms of pain and fatigue.

80. Defendants failed to conduct a reasonable vocational review of Ms. Hurlie-Dunn's claim as required by the terms of the Plan.

81. Defendants failed to address Ms. Hurlie-Dunn's vocational review in their final determination letter, in violation of ERISA's implementing regulations.

82. Not one of the innumerable providers to examine and to treat Ms. Hurlie-Dunn concluded or implied she was exaggerating her symptoms, or that her symptoms were incongruent with the objective testing or their findings on clinical examinations. As the Seventh Circuit noted in *Carradine v. Barnhart,* 360 F.3d 751 (7th Cir. 2004):

    What is significant is the improbability that [the claimant] would have undergone the pain-treatment procedures that she did, which included ... heavy doses of strong drugs ..., merely in order to strengthen the credibility of her complaints of pain and so increase her chances of obtaining disability benefits; likewise the improbability that she is a good enough actress to fool a host of doctors and emergency-room personnel into thinking she suffers extreme pain; and the (perhaps lesser) improbability that this host of medical workers would prescribe drugs and other treatment for her if they thought she were faking her symptoms. Such an inference would amount to an accusation that the medical workers who treated [the claimant] were behaving unprofessionally. *Id.* at 755 (internal citation omitted).

83. The only evaluators to question Ms. Hurlie-Dunn's veracity were Defendants' file reviewing doctors, none of whom examined Ms. Hurlie-Dunn or her treatment providers. While Defendants are permitted to defer to the opinions of their reviewing physicians, Defendants' unquestioned reliance upon their opinions despite their lack of experience with her illness, their reliance on proven false information, and their failure to consider all the evidence in the record, was unreasonable, particularly in light of the independent evaluations supporting Ms. Hurlie-Dunn's disability. Moreover, when the reviewing doctors' opinions are factored in with Defendants' failure to address the vocational assessments of Ms. Hurlie-Dunn's claim, and their unsupported dismissal of the opinions of Ms. Hurlie-Dunn's treating providers, the only conclusion to be drawn is that

Defendants' decision was arbitrary and capricious and wrong.

84. By refusing to engage with information Defendants acknowledged was thorough and required to complete its review, *i.e.*, evidence Ms. Hurlie-Dunn's symptoms impacted her functionality, Defendants proved that their financial conflict of interest impacted their decision to terminate Ms. Hurlie-Dunn's benefits and was unreasonable. *See Petrone v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson and Affiliated Cos.*, 935 F.Supp. 2d 278, 293 (D.Mass. 2013) (an "administrator cannot simply ignore contrary evidence, or engage with only that evidence which supports their conclusion.").

85. Defendants failed to meet the minimum requirements for the termination of Ms. Hurlie-Dunn's LTD benefits, in violation of ERISA, 29 U.S.C. 1133, which requires that upon a denial of benefits, the administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

86. Defendants failed to meet the notice requirements required by ERISA's implementing regulations. In particular, Defendants' adverse determination letters failed to articulate the basis for the decision to terminate benefits, failed to contain a full discussion of why Ms. Hurlie-Dunn's claim was terminated, and failed to detail the standard behind the decision.

87. Defendants failed to meet the Plan's requirements for review of claims that have been terminated.

88. Defendants failed to provide Ms. Hurlie-Dunn with a full and fair review of her claim for LTD benefits.

89. Defendants failed to respond to Ms. Hurlie-Dunn's attempts to engage in a meaningful dialogue regarding the evaluation of her claim for LTD benefits.

90. Defendants routinely ignored communications from Ms. Hurlie-Dunn regarding her claim for LTD benefits.

91. Defendants relied on information they were aware was false in terminating Ms. Hurlie-Dunn's benefits.

92. Defendants failed to engage with the objective evidence supporting Ms. Hurlie-Dunn's disability.

93. Any discretion to which Defendants may claim they are entitled under the terms of the Plan is negated by their failure to provide Ms. Hurlie-Dunn with an explanation as to their adverse action as proscribed by ERISA and its implementing regulations.

94. Any discretion to which Defendants may claim they are entitled under the terms of the Plan is negated by their failure to provide Ms. Hurlie-Dunn with a full and fair review of her claim.

95. Defendants failed to disclose the internal guidance available to claims representatives in evaluating Ms. Hurlie-Dunn's claims despite Ms. Hurlie-Dunn's request for this information, and despite ERISA's implementing regulations' requirement to disclose this information.

96. The decision to terminate Ms. Hurlie-Dunn's LTD benefits was self-serving, wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan, and contrary to law.

97. Defendants were influenced by their financial conflict of interest when they terminated Ms. Hurlie-Dunn's LTD benefits and failed to provide her with the full and fair review of her claim required by law.

98. Due to the unlawful termination of benefits under ERISA, Ms. Hurlie-Dunn has lost her rightful LTD benefits. She has also suffered emotional and financial distress due to the Defendants' actions.

99. As a result of the denial of her claim for LTD benefits, Ms. Hurlie-Dunn has lost the use of her LTD benefits.

100. Ms. Hurlie-Dunn is entitled to restitution for the loss of her benefits at the Massachusetts statutory 12% interest rate.

**FIRST CAUSE OF ACTION**
**(Enforcement of Terms of Plan**
**Action for STD and LTD Benefits)**
**(ALL DEFENDANTS)**

101. Ms. Hurlie-Dunn realleges each of the paragraphs above as if fully set forth herein.

102. The Plan is a contract.

103. Ms. Hurlie-Dunn has performed all her obligations under the contract.

104. 29 U.S.C. § 1132(a) states that:

   (a) A civil action may be brought ---

   1. by a participant or beneficiary –

      A. for the relief provided for in subsection (c) of this section, or

      B. to recover benefits due to her under the terms of her plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan.

105. Defendants' actions constitute an unlawful denial of disability benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

106. Defendants unlawfully denied Ms. Hurlie-Dunn's LTD benefits in part by: (1) dismissing, without explanation, the substantial evidence supporting Ms. Hurlie-Dunn's claim for LTD benefits; and (2) denying Ms. Hurlie-Dunn a full and fair review of their decision to deny her claim for benefits.

107. In accordance with 29 U.S.C. §1132, Ms. Hurlie-Dunn is entitled to LTD benefits under the terms of the Plan until she is no longer disabled or reaches 67 years of age, as promised under the Plan.

108. Defendants have refused to provide Ms. Hurlie-Dunn with her disability benefits and are, therefore, in breach of the terms of the Plan and ERISA, which require that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the participants of the Plan.

109. As a direct and proximate result of this breach, Ms. Hurlie-Dunn has lost the principal and the use of her rightful disability benefits.

**SECOND CAUSE OF ACTION**
**(Attorneys' Fees and Costs)**
**(ALL DEFENDANTS)**

110. Ms. Hurlie-Dunn realleges each of the paragraphs above as if fully set forth herein.

111. Under the standards applicable to ERISA, Ms. Hurlie-Dunn deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

112. Defendants have the ability to satisfy the award.

113. Ms. Hurlie-Dunn's conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

114. Ms. Hurlie-Dunn's conduct of this action is in the interests of individuals participating in ERISA plans where the plan administrators have violated ERISA's implementing regulations for their own financial benefit.

115. Ms. Hurlie-Dunn's conduct of this action is in the interests of all individuals participating in ERISA plans whose claims were denied or terminated.

116. Ms. Hurlie-Dunn's conduct of this action is in the interests of all individuals who lack the financial ability to pursue their claims for benefits as a result of the denial of their disability benefits.

117. The Defendants have acted in bad faith in denying Ms. Hurlie-Dunn's disability benefits under the Plan.

118. The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1) Declare, adjudge, and decree that Ms. Hurlie-Dunn is entitled to LTD benefits as calculated under the terms of the Plan;

(2) Award Ms. Hurlie-Dunn disability benefits and 12% interest from the date of the Defendants' breach of contract;

(3) Declare, adjudge, and decree Ms. Hurlie-Dunn was entitled to LTD benefits to which she is entitled as a disabled individual under the terms of the Plan;

(4) Order that the Defendants make restitution to Ms. Hurlie-Dunn in the amount of all losses sustained by Ms. Hurlie-Dunn as a result of the wrongful conduct alleged herein, together with 12% prejudgment interest;

(5) Award Ms. Hurlie-Dunn the costs of this action and reasonable attorneys' fees; and

(6) Award such other relief as the court deems just and reasonable.

Date: November 17, 2024                    Respectfully submitted for the Plaintiff,

                                           By:    /s/ Mala M. Rafik
                                                  Mala M. Rafik
                                                  BBO No. 638075
                                                  ROSENFELD & RAFIK, P.C.
                                                  184 High Street, Suite 503
                                                  Boston, MA 02110
                                                  T: 617-604-1160
                                                  F: 617-227-2843
                                                  E: mmr@rosenfeld.com